**FILED**
**Mar 06, 2019**
**09:25 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | | |
|---|---|---|
| **KEITH ADAM BLEVINS,** | ) | **Docket No. 2018-03-0420** |
| **Employee,** | ) | |
| **v.** | ) | |
| **JASON AARON MORROW dba** | ) | **State File No. 25838-2018** |
| **2MORROW'S TOTAL HOME** | ) | |
| **MAINTENANCE,** | ) | |
| **Uninsured Employer.** | ) | **Judge Pamela B. Johnson** |

## EXPEDITED HEARING ORDER GRANTING BENEFITS

This matter came before the Court for an Expedited Hearing on February 26, 2019. The Court must decide whether Mr. Blevins came forward with sufficient evidence demonstrating that his left ankle injury is compensable in light of Mr. Morrow's intoxication and drug use defense. For the reasons below, the Court holds Mr. Blevins met his burden and grants the requested benefits.

### History of Claim

For purposes of the Expedited Hearing, the parties stipulated to the following: An employment relationship existed between Mr. Blevins and Mr. Morrow when Mr. Blevins injured his left ankle during the course and scope of his employment on December 14, 2017. Mr. Morrow asserted an intoxication and drug use defense but agreed he was not a member of the Drug-Free Workplace Program.

The parties disputed Mr. Blevins' average weekly wage. Mr. Morrow employed Mr. Blevins as a laborer and paid him in cash. Mr. Blevins testified he earned $10 per hour and, on average, he worked thirty hours per week. Occasionally, he earned $8 per hour on "filler jobs." He estimated that in the thirteen weeks between his hire date and injury, he worked about three weeks in filler jobs.

In contrast, Mr. Morrow testified that ninety percent of the time he paid Mr. Blevins $8 per hour and only occasionally paid him $10 per hour. In a text exchange

1

between Mr. Blevins and Mr. Morrow, Mr. Blevins asked Mr. Morrow if he had taken money out of his check. Mr. Morrow responded, "No. This is a filler job and pays $2 less per hr . . . It's just to keep you guys busy between big jobs."

Mr. Morrow stated he had no recollection and kept no records concerning the hourly pay rate per week but recorded the hours worked per day in a calendar. Mr. Morrow's calendar contained Mr. Blevins' name and the hours he worked on ten of the thirteen weeks before his injury. Mr. Blevins' "recorded" hours in those ten weeks totaled 192.

The parties additionally disputed whether Mr. Blevins' injuries were due to intoxication or drug use. Before the injury, Mr. Blevins suffered from chronic back pain. He was under the care of Dr. David Coffey, who prescribed 7.5 milligrams of hydrocodone four times per day. Mr. Blevins testified that some days his pain was worse than others but he always had pain. On the worst days, he might take more than four doses, so his pill counts were short at his next office visit. Dr. Coffey's records indicated multiple occasions of abnormal pill counts and abnormal urine drug screens.

Mr. Blevins indicated the pain medication had no effect on his ability to walk, balance, or pick things up. He stated that he took the medication daily and was told by Dr. Coffey he could work while taking hydrocodone. He also stated that Mr. Morrow knew about his chronic pain and use of pain medication.

Mr. Morrow denied that he knew Mr. Blevins was taking pain medication. He stated that he knew Mr. Blevins was on "drugs" before, and when he hired him, he asked Mr. Blevins whether he was on drugs or clean. He testified that Mr. Blevins told him he was clean. He indicated that, had he known Mr. Blevins was using pain medication, he would not have allowed Mr. Blevins on the jobsite. Mr. Morrow testified that he has thrown employees off the job site in the past for intoxication or drug use. He admitted that he did not observe Mr. Blevins working intoxicated or under the influence of drugs.

On the injury date, Mr. Blevins took his first dose of hydrocodone as usual and left for a roofing job. While working on the roof, Mr. Blevins grabbed two heavy bundles of shingles and turned to go up a steep roof when he felt pain in his left ankle. Afterward, Mr. Morrow drove Mr. Blevins to Big South Fork Medical Center (BSFMC), where x-rays showed a left-ankle fracture. Due to BSFMC's limited services, Mr. Blevins was sent to Methodist Medical Center (MMC) for an orthopedic consultation. At MMC, the attending physician diagnosed not one, but two, fractures in his left ankle and lower leg and referred him to an orthopedic surgeon.

A few days later, Mr. Blevins saw Dr. Jean Francois Reat, who performed surgery. Following surgery, Dr. Reat continued to treat Mr. Blevins' ankle and kept him off work until February 19, 2018, a period of nine weeks and four days.

After Mr. Blevins returned to work, he developed pain, stiffness, and swelling in his left ankle. He returned to Dr. Reat, who referred him to Dr. Tracy Pesut. Dr. Pesut took him off work on April 5 and recommended another surgery. After the second surgery, Dr. Pesut kept him off work until August 9, an additional eighteen weeks.

Over the course of his treatment, Mr. Blevins incurred expenses at Tennessee Orthopedic Clinic of $17,593.00; at Methodist Medical Center of $15,009.10; and at Parkwest Medical Center of $13,650.92.[1] His medical charges totaled $46,253.02.

At the Expedited Hearing, Mr. Blevins asked the Court to order payment of his medical expenses and to order Mr. Morrow to provide ongoing medical treatment with Dr. Pesut as the authorized treating physician. He further asked the Court to award temporary total disability benefits for twenty-seven weeks and four days. He argued, based on thirty hours per week, his average weekly wage was $286.15 and his compensation rate was $190.80.

Mr. Blevins also argued that Mr. Morrow failed to meet its burden of showing that his injury was proximately caused by intoxication or drug use. None of the medical records demonstrated he was intoxicated or under the influence of drugs at the time of the injury. He contended that no evidence suggests the hydrocodone had any effect on his injury. Additionally, he argued Mr. Morrow admitted that he did not observe Mr. Blevins intoxicated or under the influence of drugs and testified that he would not have allowed him to remain on the job if he had.

Mr. Morrow argued that the medical records demonstrated a history of abnormal urine drug screens and abnormal pill counts. On the date of injury, Mr. Blevins admitted that he took hydrocodone before work, and the injury happened shortly after he started working on the job site. Mr. Morrow asked the Court to deny Mr. Blevins' request for benefits because his injury was proximately caused by his intoxication or drug use. In the event the Court awards benefits to Mr. Blevins, Mr. Morrow argued that Mr. Blevins would be entitled to the minimum weekly compensation rate of $135.20.

### Findings of Fact and Conclusions of Law

To prove a compensable injury, Mr. Blevins must show his left ankle injury arose primarily out of and in the course and scope of his employment. However, he need not prove every element of his defense by a preponderance of the evidence to succeed at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must present sufficient

---

[1] Mr. Blevins did not submit bills regarding his treatment at BSFMC or include the amount charged by BSFMC in his medical bill summary.

evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*

Mr. Morrow contended that Tennessee Code Annotated section 50-6-110(a)(3) bars Mr. Blevins' claim because he was intoxicated or under the influence of drugs at the time of the injury. This section precludes compensation in circumstances where the injury was "due to" the employee's intoxication or illegal drug usage. "Due to" means the proximate cause of the injury and not merely a remote or contributing cause. *See Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 449 (Tenn. 2012).[2] Under section 50-6-110(b), the burden of proof shifts to Mr. Morrow to establish this defense. *Bowlin v. Servall, LLC*, 2018 TN Wrk. Comp. App. Bd. LEXIS 6, at *12 (Feb. 8, 2018).

Here, Mr. Blevins acknowledged that he suffered from chronic pain and took hydrocodone during the period before the injury. He further acknowledged, and the medical records showed, that he had abnormal pill counts and urine drug screens during the same period. However, there is no medical evidence that Mr. Blevins was intoxicated at the time of the injury or that one dose of hydrocodone on the morning of the injury proximately caused his left ankle injury. A history of abnormal drug screens alone does not satisfy Mr. Morrow's burden of proving that Mr. Blevins' drug use proximately caused the injury.

Additionally, while Mr. Morrow denied knowledge of Mr. Blevins' use of hydrocodone while working, he admitted he did not observe Mr. Blevins working under the influence of drugs and, if observed, he stated that he would not have allowed Mr. Blevins to continue working. Further, Mr. Blevins' unrebutted testimony provided that the hydrocodone had no effect on his ability to walk, balance, or pick up items.

Just as the Workers' Compensation Appeals Board concluded in *Bowlin*, the Court similarly finds that Mr. Morrow presented no evidence that Mr. Blevins was intoxicated at the time of his injury or that his drug use was the proximate cause of the accident. Therefore, the Court holds Mr. Morrow failed to demonstrate that Mr. Blevins' intoxication or drug use proximately caused his injury. As a result, and in light of the parties' stipulation, the Court concludes that Mr. Blevins is likely to prevail at a hearing on the merits that his injury arose primarily out of and in the course and scope of his employment.

The Court must next determine whether Mr. Blevins is entitled to medical and

---

[2] At the time the Tennessee Supreme Court decided *Mitchell*, Tennessee Code Annotated section 50-6-116 (2012) declared the Workers' Compensation Act to be "a remedial statute, which shall be given an equitable construction by the courts[.]" However, the Appeals Board later explained, "This previous statutory preference for an equitable construction and a remedial application played no role in the outcome of *Mitchell*; accordingly, we are bound by its principles." *Scarbrough v. Right Way Recycling, LLC*, 2015 TN Wrk. Comp. App. Bd. LEXIS 9, at *13 (Apr. 20, 2015).

temporary disability benefits.

Regarding past medical expenses, the evidence demonstrated Mr. Blevins fractured two bones in his ankle, underwent two surgeries, and incurred medical expenses totaling $46,253.02. In his Revised Notice of Filing Medical Records, Mr. Blevins gave notice that "counsel for both parties have conferred in this matter and agreed to stipulate to the admissibility of all the attached and above-referenced records." The filing contained both Mr. Blevins' medical records as well as itemized billing records prepared by his treating physicians. Based on the parties' stipulations to the admissibility of the records, the Court concludes Mr. Blevins sufficiently demonstrated that he is likely to prevail at a hearing on the merits that he is entitled to past medical expenses. *See Miller v. Logan's Roadhouse, Inc.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 59, at *13 (Nov. 15, 2018) (When an employer denies a claim, it does so at the risk that it may be required to pay for medical care with the physician of the employee's choosing).

Concerning ongoing medical treatment, the Workers' Compensation Law provides that an employer shall provide an injured employee with reasonable and necessary medical treatment causally related to the work injury. *See* Tenn. Code Ann. § 50-6-204. Accordingly, the Court holds that Mr. Morrow shall provide Mr. Blevins with reasonable and necessary medical treatment related to his work injury and Dr. Pesut shall be the authorized treatment physician. *See Young v. Young Elec. Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *18 (May 25, 2016).

Finally, as to temporary disability benefits, the Workers' Compensation Law provides that an employer shall pay temporary total disability benefits to an injured employee when the employee proves: (1) he became disabled from working due to a compensable injury; (2) a causal connection exists between the injury and his inability to work; and (3) he established the duration of his disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

Here, the Court concluded that Mr. Blevins is likely to prove that his injury arose primarily out of and in the course and scope of his employment. Through his testimony, he established that he missed twenty-seven weeks and four days of work following the surgeries to repair his ankle. Accordingly, the Court holds that Mr. Blevins presented sufficient evidence demonstrating he is likely to prevail at a hearing on the merits that he is entitled to temporary total disability (TTD) benefits.

To determine the amount owed, the Court must determine Mr. Blevins' average weekly wage. Mr. Blevins testified that, before the injury, he earned $10 per hour, occasionally earned $8 per hour in filler jobs, and worked an average of thirty hours per week. Mr. Morrow testified he paid Mr. Blevins $8 per hour, occasionally $10 per hour, and noted in his calendar that Mr. Blevins worked 192 hours during ten of the thirteen weeks between his hire date and injury. Neither Mr. Blevins nor Mr. Morrow knew or

5

recorded the hourly rate paid to Mr. Blevins on any given day or week. However, the Court finds the text message exchange supports Mr. Blevins' testimony that he generally earned $10 unless he worked a filler job at the lower rate.

With regard to the number of weeks that Mr. Blevins earned $10 versus $8, Mr. Blevins estimated that he worked three weeks of filler jobs at $8 per hour and the remaining ten weeks at $10 per hour. However, Mr. Morrow testified that Mr. Blevins worked ninety percent of the time at $8 per hour. Additionally, Mr. Morrow's calendar noted that Mr. Blevins only worked in ten of the thirteen weeks between his hire date and injury date. Due to poor record-keeping by both parties, and weighing the competing testimony and the hours noted in Mr. Morrow's calendar, the Court finds Mr. Blevins worked 192 hours over ten of the thirteen weeks between his hire date and his injury. The Court further finds that Mr. Blevins earned $10 per hour for seven weeks and $8 per hour for three weeks.

The Court's calculations are as follows: 192 hours divided by ten weeks equates to an average of 19.2 hours per week. 19.2 Hours multiplied by seven weeks at $10 per hour equals $1,344. 19.2 Hours multiplied by three weeks at $8 per hour equals $460.80. Adding these together, the Court finds Mr. Blevins earned $1,804.80 over ten weeks, which equates to an average weekly wage of $180.48. Because two-thirds of his average weekly wage would fall below the minimum weekly compensation rate, the Court holds that the evidence demonstrated that Mr. Blevins is entitled to the minimum weekly rate of $135.20. Accordingly, the Court orders Mr. Morrow to pay Mr. Blevins twenty-seven weeks and four days of TTD benefits at $135.20 per week for a total of $3,727.64.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Morrow shall pay Mr. Blevins' past medical expenses totaling $46,253.02 and shall provide ongoing medical treatment for his work injuries with Dr. Pesut as the authorized treating physician.

2. Mr. Morrow shall pay Mr. Blevins temporary total disability benefits for twenty-seven weeks and four days at the minimum weekly workers' compensation rate of $135.20 for a total of $3,727.64.

3. This matter is set for a Status Conference on **July 11, 2019**, at **10:00 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without the party's participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).

The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED March 6, 2019.**

**PAMELA B. JOHNSON, JUDGE**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Motions - Blevins' Motion to Compel Discovery
4. Court Order - Agreed Order for Extension of Time to Respond to Discovery
5. Court Order - Show Cause Order
6. Docketing Notice - Show Cause Hearing
7. Court Order - Amended Show Cause Order
8. Request for Expedited Hearing
9. Docketing Notice - Expedited Hearing
10. Court Order - Order Following Show Cause Hearing
11. Affidavit - Keith Blevins
12. Court Order - Agreed Order for Continuance of Expedited Hearing
13. Docketing Notice - Expedited Hearing
14. Employee Notice of Filing - Medical Records
15. Employer Notice of Filing - Medical Records
16. Employee Notice of Filing - Medical Records

As announced at the hearing, the Court did not consider, and did not include, attachments to these pleadings unless admitted into evidence during the Expedited Hearing and listed below.

Exhibits:
1. Keith Blevins' Affidavit
2. Expedited Request for Investigation Report
3. Employer's Medical Records of:
   - Coffey Family Medical Clinic
   - Big South Fork Medical Center
4. Employee's Medical Records & Expenses of Tennessee Orthopedic Clinic
5. Employee's Medical Records & Expenses of Methodist Medical Center
6. Employee's Medical Records & Expenses of Big South Fork Medical Center
7. Employee's Medical Records & Expenses of Parkwest Medical Center
8. Photographs
9. Employee Medical Bill Summary
10. Hourly logs
11. Text Messages

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on March 6, 2019.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Chris W. Beavers, Employee's Attorney | | | X | chrisbeavers@banksandjones.com |
| Michael T. Grubbs, Employer's Attorney | | | X | mcraig-grubbs@fksclaw.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

8